This afternoon is 4-18-0-3-8-0, the re-marriage of Hundley for the appellant and cross-appellee is Edward Graham Jr., you are he, sir? And for the appellee cross-appellant, Andrew Martone. Is that pronounced correctly? Okay. Thank you, Mr. Graham. You may proceed, sir. Thank you, Mr. Court, Counsel. There are at least, I guess I can say there appear to be two different mechanisms in the Support for Withholding for Support Act by which a payer may be obligated to pay a statutory penalty because of their failure to pay over withheld support to an obligee. Under Section 35A of the Withholding Act, the statute provides that a penalty will be imposed when a payer acts knowingly in failing to pay the previously withheld support over. And in Section 45J of the same Act, the statute provides that a penalty will be imposed when the payer ignores, I mean my terms, not the statute's, but when the payer ignores a notice of non-receipt that's forwarded by the obligee to the payer. I'm unable to find in my research relative to cases, and I don't see anything in the statute that requires any connection between the two of those necessarily, although I think when you read it, it appears that maybe one follows the other and that in order to collect a penalty, you must file or send a notice of non-receipt. But at least as far as the case law that I've read, I haven't found any connection between the two. But what I am able to find is that regardless of which avenue or mechanism you take to get to the point where a penalty should be imposed on a payer, the penalty that's to be imposed is exactly the same in both cases. And that penalty, irrespective of the mechanism by which it's imposed, is that the payer shall in addition to the payment of the previously unpaid support and interest, pay an additional sum equal to $100 a day for every day that the amounts designated in the income withholding order are not paid over to the State Disbursement Unit for the benefit of the obligee. The trial court in this case properly found after this matter was remanded on a determination that Judge Steigman authored in this court, that Buckhart, Sand and Gravel was in fact a payer. The trial court properly found after a trial that both of those aspects of the statute had been satisfied. They found that the payer had acted knowingly after it had received a notice of non-receipt from the obligee. And it imposed as a result of that a statutory penalty in the amount of $112, which was computed to be $100 per day for every day from the 12,000. Correct. And it was computed to be $100 per day for every day from the day that the order for withholding was effective, which in this case was January 19th, until I believe it was May 23rd. And there's dispute in the record as to whether the proper date for the termination of the penalty should have been May 23rd or May 26th. But irrespective of that, the court imposed a penalty of $112,000. Frankly, we were willing to live with that at the time, but Buckhart was not. They took exception to that ruling and suggested on reconsideration to the trial court that Buckhart should not be penalized for having failed to pay over support during periods of time when the court had determined it had not acted knowingly. That being the period of time from the time of the service of the income withholding order until its receipt of the notice of non-receipt. And after a hearing on that matter, the trial court determined based solely on the language of the statute itself that the statutory penalty should not have been imposed for any period of time when Buckhart was not in fact acting knowingly. And it therefore reduced the amount of the statutory penalty from the $112,000 to an amount of $53,400. The trial court's ruling in that regard is wrong in at least two respects. In the larger scope of things, the trial court's determination was based on evidence presented at the trial that Buckhart acted without knowledge of its obligation under the income withholding order. And that concept is not evidenced in the record. I'm not going to go into all of the evidence that was presented to restate the whole thing except suffice it to say that during the course of Buckhart's involvement in this process, it actually acknowledged the receipt of the income by the certified mailing receipt. And at that time, on the first effective date after that, which turned out to be January 19th, started withholding money from the obligor's wages. The representative of a representative of my office, when the money wasn't paid over through the State Disbursement Unit for the benefit of the obligee, representative of my office contacted Buckhart repeatedly on a number of different occasions trying to find out why the money wasn't being paid over, whether it was being withheld or not withheld or sent off or not sent off. And over a period of time, between the time the order for withholding should have taken effect after the 1st of January until I believe the date's February 16th of that year, we received no response back from Buckhart. There were at least six payroll periods that elapsed during that period of time when the obligee should have received the support obligation and didn't. And so there was a notice of non-receipt that was forwarded to Buckhart. It seems to me there are two aspects of this case, two different ones. Namely, the first is the findings of fact that the trial court made after the hearings which were conducted having heard this various evidence. And then the second aspect is, given these findings of fact, the trial court's interpretation of the statutes and case law and determination as to what penalty should be imposed in the court after the hearing on the motion for reconsideration reduced it to, what was it, 57,000? Fifty-three-four, I think is the number. Fifty-three-four. She reduced it to. Okay. Well, just pausing there, I suppose the first question is with regard to the points that you're just making. In addressing the trial court's findings of fact, the standard is whether or not those findings are contrary to the manifest way of the evidence. Correct. Are you asserting that they were? Yes, we are. Which ones? Well, these that I'm just mentioning to you right now. When the trial court said that the, you know, Judge, I want to say two things about that. I'm asserting that the finding of fact that she made was incorrect. I don't think it makes a difference in the ultimate determination of the case either way. And I'll get to that here in a second. But they're incorrect to the extent that the trial court made a determination that Buckhart did not act knowingly from the time it received the income withholding order until the time that it received the notice of non-receipt. And at the time it received the notice of non-receipt and failed to act on it, it started to act knowingly in failing to pay the money over to the state attorney. Well, that's based on the trial court's construction of the statute. That was based on the trial court's analysis of the facts. Now, the statute says something different than that. The statute says, I think very unequivocally, that the penalty to be imposed is computed based on $100 a day penalty, but it's computed during a specific period of time. And the period of time it's computed over is the time that the payor fails to pay the amount of support that it owes over to the state disbursement unit, pursuant to the terms of the income withholding order. Regardless of at what point in time they could be determined to have known that they should have complied and didn't, or irrespective of whether or not they received a notice of non-receipt. Well, my understanding of the position is, unless there's any evidence that she misapplied the law. Right. Let's assume we don't agree. Let's assume this court thinks she applied the law correctly, then the question is, what about her factual findings? Why shouldn't we accept those? And the reason you shouldn't accept it is because they're just not, they're not based on the evidence that was presented. What, in what sense? When you say they're not based on the evidence, the standard is, are these findings contrary to the manifest way of the evidence? So no reasonable person could have viewed this evidence and reached the conclusion that the trial court did. I believe that's correct. That's a real high standard, and given the care that the trial court demonstrated with very impressive what she's written, why shouldn't we, even if we might disagree, which isn't the criteria, why shouldn't we exercise the deference required to her findings of that? And that's what I was getting at here. When the trial court made the determination that Buckhart wasn't acting knowingly up until, from the time they received the income withholding order until the time that they received the notice of non-receipt in not paying the money out, because they withheld it. They just withheld it in their own bank account and then didn't pay it out over a period of time which amounted to before the notice was sent, six payroll periods. That length of time permits the obligee in this case a presumption that in fact they were acting knowingly. So they've got to, Buckhart's got to overcome that presumption to get there. So to overcome that presumption, the evidence that's presented in the case is that they actually received it and they knew they received the income withholding order. They passed it through their channels to have it processed. So if they failed to do it properly or negligently, is that the same thing as knowingly, which maybe implies a willfulness? I don't think that knowingly necessarily implies a willfulness, but I don't think it's the same thing as negligence. Is negligence a condition? Negligence is a closer standard, but the knowing aspect of it I think is a standard of its own, and I think that standard means that if they have the information that says they're supposed to be doing something and they don't do it. That sounds like absolute liability, doesn't it? Well, the statute would act that way. Is that what you're arguing? I'm arguing in this case that, as you've mentioned, the court's determination that they only acted knowingly after a certain point in time given what the evidence was about what happened before that is contrary to the manifest way to the evidence. And I'm also arguing that... That goes to the whole question of knowingly and what the trial court thought that meant. And I agree with that. If they acted carelessly, they intended to carry it out, and they punched, I mean literally punched certain buttons to do it, but failed to punch the right ones. Right. Is the trial court in error to conclude that their failure under those circumstances was not knowingly? In this case, they are. And they are in this case because more happened than just the fact that... But that would mean, wouldn't that then be, if mere negligence isn't good enough, that is, if you're negligent that covers it, we're arguing essentially then for an absolute liability that the mental state doesn't really matter, does it? I don't think the mental state makes a difference. Essentially, you're arguing they had notice, they didn't pay, you're guilty, next case. Not on the issue of whether or not the evidence, the determination is contrary to the manifest weight of the evidence. I can tell you, with respect to that and the court's decision that they were only knowing in their failure after a certain period of time, that after they received and they acknowledged that they received the incumbent holding order and they passed it through the channels to have it processed. After that wasn't complied with, during those six payroll periods where they should have been complying with it, my office was calling them frequently and repeatedly to tell them we're not receiving the support, we don't know why we're not receiving the support, if you're sending... Is that the same thing as sending the notice of non-receipt? No, it's not the same thing. And we didn't intend to... Does the notice of non-receipt have, how do I put this, more significant effects? Yeah, it does. Well, then why didn't you send that sooner? I'm sorry? Why didn't you send it sooner? Well, that's why I kind of started off. I don't know whether the notice of non-receipt is required in order to... because the statute doesn't really say whether... The statute speaks of a notice of non-receipt. It does speak of a notice of non-receipt. As opposed to phone calls from the lawyer's office? Right. Well, phone calls from the lawyer's office deal with whether or not they're acting knowingly. The notice of non-receipt is a pretty much strict liability situation. It says if you send them the notice of non-receipt and they fail to comply, there's a penalty, and the penalty is exactly what I've told you it was before. Doesn't that suggest a different statutory standard for these two instances, as the trial court found? And that's why I indicated before, I don't know whether they really are linked together or intended to be linked together, or whether they're intended to be imposed separately. Well, it's not a model of legislative dress. It is not. Would it be correct that this court has previously determined in Donahue, which I think was one of the early cases under this, that the law was not meant to cover negligence? I think that's the case. And isn't this negligent? In that they got a notice, and they thought they were doing what they needed to do, and it broke down. Their internal process broke down, or there was a mistake, and it was a negligent mistake. One person said it was a horrible mistake, which I would agree. But that's not what the statute was designed to cover. No, that by itself, I don't think the statute was designed to cover. But that's not the entirety of the situation. Essentially, that is, except for the phone calls you made. Right. And to clarify that, Your Honor, we made those phone calls informally, not with the notice of non-receipt, because we didn't want to end up in this situation. We just wanted them to pay the support. But that information was known to the trial court? That information was known to the trial court, that we provided that information to them. And we called them on the phone. We let them know there was a problem. They never acted on it. And there's some factual difficulties with that as to no records being made or uncertainties about who called when? I don't believe so. My assistant testified, I think, very specifically when she called and how often she called and the messages that she left. What did the trial judge say about the phone calls? She didn't mention them. Is that significant? Well, it's significant in the fact that I think that renders her factual determination as to the timeliness of that knowing. How about, could it be significant because she had doubts about them and didn't find it persuasive or credible? I think that if that were the case, she would have mentioned that. And she didn't mention it. I think she would have said specifically that she didn't find it persuasive. Is it implicit in the ruling she made? No, I don't think it is. And the reason I say that is because she does come to the point where she says they acted knowingly in failing to pay or receive support. Now, that's a factual determination. As far as the obligation that's imposed on the payor when they receive the notice of non-receive, that's not a factual determination. That's a legal determination. They received it. They acknowledged that they received it. They failed to act on it. They failed to act on it for 16 payroll periods after that date. So the question becomes at that point in time, what's the penalty that's imposed by the statute as a result that they're failing to act? And that's why I say, irrespective of whether they acted knowingly during the period of time from the time they received the IWO up until the time that they received the notice of non-receive, they received the notice of non-receive and they didn't act on it. And the penalty that's prescribed in the statute is exactly the same for either event. But for the phone calls, wouldn't this be the same situation as described by Justice Connect? That is, we'd just be dealing with negligence or carelessness? Well, if the phone calls hadn't been made, if there hadn't been any communication at all, we'd be dealing only with the statutory situation that they filed. So essentially the case for imposing this penalty and rejecting the trial court's findings hinges on the phone calls, what was said, and how it was received. If a factual determination is going to be made, it would. I don't think it's necessary to make the factual determination because the penalty that's imposed is computed only one way, no matter how you get to impose it, whether it's because of their knowingly failing to pay over the money or whether it's because they didn't abide a notice of non-receive, but the penalty is still the same. Are you disputing the claim by Buckhart that their initial failure was not intentional, that it was due to a screw-up of some kind, carelessness, or they attempted to pay it, but the guy punched the wrong buttons or whatever? I have no reason to dispute what they say in that regard. I think I mentioned to you at the time that we argued this case the last time, I think it was an intentional act on their behalf. Why would they do that? I think they were – it's a small company, they know all their employees, I think they were trying to – Okay, so what is the benefit? They were trying to prejudice my client. At least I think that. Now, can I prove that in the record? No, I can't. Is there any evidence to support that? And I didn't even attempt to prove it. Because all we attempted to prove was that we sent them the notice and they failed to abide by the notice. And the penalty that's to be imposed in that situation is $100 a day for every day that the notice of withholding, the income withholding order, was not complied with. Regardless of when it's found that they're negligent or not negligent, but knowing in their failure to pay, regardless of the fact that they received the notice of non-receipt on day 15 as opposed to day 30 or day 45 or day 60, regardless of when that takes place, the penalty imposed is established by the statute. Let me see if I understand that correctly then. What you're saying is, even though the purpose of Section 35A is to punish a payor who knowingly fails to withhold, because it starts right out with that language. Right. That if there's a period of time during which it's not knowing, then there's a period of time in which it's knowing. Even though the intention of the statute is to punish those people who knowingly fail to pay, you're actually supposed to go back past that date to whatever the first date was that non-payment occurred. Whether there was a notice of non-receipt sent or not. That's what the statute says. That's your position. That is my position. That is exactly what the statute says. And in this case, where there was a notice of non-receipt, if I could be permitted just to finish the sentence, because there was a notice of non-receipt sent, and that's, as far as we were concerned, the operative point in time at which we're making this determination. The notice of non-receipt was not acted on within the statutory period, which was 10 days, and so the statutory penalty comes into play. And that penalty is what we have. Now, if your interpretation of the statute is correct, the statutory provision dealing with notice of non-receipt would be entirely unnecessary, wouldn't it? It would be entirely unnecessary. You have to construe the statute by disregarding the statutory scheme that the legislature came up with in order for you to prevail? On either side, you would have to disregard the terms of the statute. Well, let's just stay with you for the moment. Well, with respect to the notice of non-receipt. Would we be able to disregard the whole business about the non-receipt? Yes. Why should we do that? Well, on my side of the fence, no, I don't think you can disregard it. I think it's there for a reason. The statute says what it says. It starts off with the notion that if they act knowingly, they're penalized. And then later on in the statute, I believe because of an amendment that took place after the statute was adopted, there's a provision that says if you receive a notice of non-receipt, you must act on it within 10 days. And what you have to do is pay the unpaid support plus the interest, and if you don't act on it in 10 days, the penalty that's imposed in the statute, the $100 a day for every day that the income withholding order is not complied with, shall be imposed. And it's a mandatory obligation under the statute. So you have to have the finding of knowing for the failure to respond to the notice. One of the two things. But once that happens, I don't like to use the term relate back, but every day that it wasn't paid at any time during that period is deserving of a penalty. Correct. Or is mandated that there will be a penalty. That's what the statute requires. Thank you, Your Honor. Thank you, Counsel. Mr. Martone. Good afternoon, Your Honors. May it please the Court. Counsel. My name is Andy Martone. With me at counsel table is Ashley Keene. Ashley's actually done most of the heavy lifting on this case, and so I just get the fun part. Well, okay. I'm not sure that's fair, but go ahead. It is completely unfair, Your Honor. Absolutely. This case is really about purposeful disregard. And that is, of course, the standard by which courts have interpreted the term knowingly in the statute. And so I'm going to be arguing three things in front of you. The first thing I'm going to address is whether the income withholding order itself was a compliant income withholding order. The argument from opposing counsel is that the law of the case says it was a compliant order. I loathe to argue with Your Honor about what your decision means since you were the author, but at the same time that's not how I read your decision. The second argument I'm going to make is that the evidence clearly shows, the manifest weight of the evidence clearly shows that the violation was not known. This is really a case where we had two mistakes.  The first mistake was because he failed to properly code the disbursement of the funds. He testified to that and his testimony was unequivocal and uncontradicted. The second mistake was when we received the notice of nonpayment, we, Buckhart, Sand and Gravel, believed that we had delivered it to Mr. Mortimer, and Mr. Mortimer does not believe he received it. A miscommunication or a cool hand Luke problem, Your Honor. A failure to communicate. Both of these are at best negligence. They are not purposeful and we are not purposefully disregarding the court order. I'm going to address first the issue of dealing with whether or not the income withholding order itself was compliant. I don't believe that's the law of the case, Your Honor. A plaintiff cites your opinion to state that this court previously held that the income withholding order was valid and complete. That's not the way I believe your opinion reads. I believe that the way the opinion reads is, Your Honors, we're holding, and I quote, the legislature did not intend to allow for a third party respondent to contest the validity of an order of support underlying the valid order. That is from the opinion at paragraph 17, Your Honors. In addition to that, what the holding was in paragraph 19, the language of the support act does not allow a third party respondent served with a valid withholding order to contest the validity of the underlying order of support. Our reading is that the support act imposes a mandatory obligation to comply with a properly served withholding order. The first case that was in front of this court was not a challenge to the propriety of the specific compliance of the withholding order. It was a challenge to the issue of whether or not the fact that the withholding order did not properly attach to the support order was compliant with the statute. And Your Honors held that that's not an issue we could raise. The issue we're raising instead deals with the strict compliance requirement. And this is found in the Schultz v. Performance Lighting case, Your Honors. Schultz specifically found these points. Point number one, the withholding act is penal in nature. Clear. It's a penalty statute. Number two, as a result, strict compliance with all of the requirements of the statute is required. You can't have substantial compliance with the penal statute. You have to have strict compliance in order to trigger the penalties. Failure to strictly comply with the requirements of subsection to section 20C of the act invalidates a notice of withholding as a matter of law. And again, that's what the court held in Schultz. And a plaintiff cannot maintain a cause of action based on an improper or noncompliant withholding order. Is there a mechanism for you to respond to that? If you believe that the order is improper, then isn't there a mechanism in the statute for you to file some sort of response or notice to the offender? I suppose there would be, Your Honor, but I don't believe that's our obligation. I think that because it's a punitive statute, a penal statute, the strict compliance comes on the part of the party sending us the order. Can you simply ignore it? We cannot. You cannot simply ignore it, Your Honor. In this case, we did not. Then going back to Justice Ehrman's question, apparently there's something you have to do. I think that in this case the proper procedure probably would have been to approach the court and say we received this withholding order and it is improper. But I don't believe that that necessarily means that you can still impose penalties based on an invalid order. So in the absence of doing anything, you can ignore it? I think that in the absence of doing anything, I don't know that the order can be ignored, but I know that the order should not trigger penalties under Section 35A. How about in the absence of doing anything, the penalties don't start? That's very wrong. And I think that's also exactly what the court held in Schultz v. Performance Lighting, because that's what happened. Is that what the legislature wants, do you think, with this act? In terms of what the legislature wants with the act, I believe that the legislature imposed the penalties that it imposed to punish willful noncompliance. In fact, that's what I think the legislative history of the act shows. It doesn't punish negligence. It doesn't punish failure of communications. It punishes willful misconduct. And that is specifically because the domestic arena can get very, very acrimonious. But it punishes that in the context of calling it knowing, not willful. Correct, Your Honor. So you're in the position of saying we got notice, we tried to honor the notice, but our own screw-up prevented us from honoring the notice, and then when we got the next notice, we figured out something bad had happened, and we tried to comply with that, and we didn't. So now we want to go back and say, well, you know, the first notice we got, even though notice is for the purpose of notice. So you knew what you were doing. You knew what it was about. You knew what you were supposed to do. You effectively conceded by the facts that you knew what you were supposed to do, but you didn't do it. So now we go all the way back to the beginning and say, well, it was a pretty lousy notice to begin with, so we shouldn't have any penalties. I think that that's because it's a punitive statute, Your Honor. That's what strict compliance requires, because substantial compliance isn't enough as a matter of law. It doesn't sound much like rough justice, though, does it? In terms of sounding like rough justice, Your Honor, the obligation to prepare a complying notice is on the party serving the notice. Months later, you discover, gee, we really screwed up all the way around. Let's go back and see if we can find some deficiency that we can argue to the court, render this notice never any good. That's essentially what happened, isn't it? That's this argument, yes, Your Honor. Well, isn't that really not something? He's got a point for candor. Yes, and thank you for that. But that's really not something that we should encourage or support, is it? I don't know about encouraging or supporting it, Your Honor, but I think that when this Court views a punitive statute, a punitive statute has to be viewed through a different lens than a non-punitive statute. And so I think that the strict compliance requirement, because the penalties are clearly draconian. There are cases where it's a million dollars for a $100,000 obligation. And so I think that whenever the Court views that, the lens you have to use is strict compliance under the law, Your Honor. And sometimes that may reach an inequitable result, but frankly, the massive penalties in some of these cases reach equally inequitable results. And the Courts say, based on the statutory scheme, that's okay. If justice is the goal, doesn't it sound like the trial court, after giving this case a careful evaluation, essentially achieved it? That may have been the trial court's intent, Your Honor. I cannot speak to the trial court's intent. The trial court opinions were very, very well reasoned. And the trial court made very careful credibility determinations. For example, the trial judge held, and I'm quoting from her second order, Mr. Flatt is credible when he states that it was always his intention and expectation that income would be withheld from John's pay and properly forwarded to SDU. Well, Your Honor, that's a factual finding by the trial court that we intended to make the withholding after receiving the notice. And so that intent shows that our disregard, if there was a disregard, was not purposeful under the law. I asked Mr. Graber about the phone calls. Does the trial court address that? They seem to put a lot of weight on it. I don't believe the phone calls are entitled to weight because I think the trial court addressed them with who it credited. Addressed them what? Addressed them by crediting the testimony of Mr. Flatt and Mr. Morgan. In what way did that testimony address the phone calls? Well, I think that counsel's point with the phone calls is if we kept calling your office, how could it be legitimate? How could you truly want to make these payments? And? And the trial court found our witnesses credible when they denied that they were trying to not make payments, when they claimed that they were the result of mistakes. Did anyone from your business testify about receiving the phone calls and what it meant? We testified that we did not receive the phone call, Your Honor. And so there was a dispute in terms of receiving the phone calls. We did not remember. Now, is it significant or is it troubling with this dispute, the evidence on a point that, as you heard, Mr. Graham says is pretty important, that the trial court didn't resolve it? I think the trial court did resolve it by crediting our witnesses. And I think the crediting of our witnesses, saying our witnesses. So it's your witnesses, Flatt and who was the other one? Mr. Mortimer. Flatt and Mortimer said we didn't get any phone calls. Flatt and Mortimer said I made a mistake and the withholding was the result. Mortimer said it was the result of a mistake. Flatt said I wanted to pay it. I forwarded the notice or I wanted to forward the notice to Mr. Mortimer, and Mr. Mortimer said I didn't receive it. A miscommunication. Did the witness for Sally's firm identify with whom she spoke when she made these phone calls? I'm sorry, Ron, I don't remember. If she specifically identified someone who received the call. So Flatt and Mortimer, were they asked if they received any phone calls? I believe they were, at least one of them was, Your Honor. Mortimer is not going to receive any phone calls. He's an outside accountant. Exactly, and that's part of the problem in this case. That was because of the miscommunication, because my client doesn't do its own internal billing, doesn't do its own internal payroll. It farms that out to an accountant who has a separate software system. So that is the source of the second miscommunication, because when Mr. Flatt received the notice, he testified and was credited by the court that he had forwarded that notice to Mr. Mortimer, and Mr. Mortimer denied receiving it. And so from that perspective, I think the trial court's finding that we credibly said it was always our intention to comply, that finding of credibility I believe was entitled to deference, Your Honor. Let's assume for the moment that these phone calls had in fact been made. Wouldn't that be a bad thing for Buckhart to have ignored them? I think it would be evidence that would weigh in the plaintiff's favor in this case, Your Honor. Definitely you don't want to ignore phone calls. Because of Dunahee, they never intended to not pay. They just wanted to pay on their schedule. And they got blacked. In our case, Your Honor, we never intended to not pay. We actually made the withholdings and intended to pay and thought we were paying. But what had happened was the message never came through from the accountant's software to our office saying send the check. And that's the process that we use. And so it's just a miscommunication. We always intended to comply, and that's what the trial court found. It was just a simple two mistakes. In many of these cases, there's a mistake. In this case, there were two related mistakes. But two mistakes do not equal purposefully ignoring a court order or purposefully disregarding our obligations under the law. They were just mistakes. And the statute's not designed to punish mistakes. So in your view, there should be no penalty at all? Even separate and apart from the adequacy of the notice. That's correct, Your Honor. The adequacy of the original notice. Yes. So there should be no penalty even after the non-receipt was sent? It's our viewpoint in the case, Your Honor, that the finding that we never intended to purposefully disregard a court order. Still applies even after the receipt? Still applies even after the receipt. Of the non-receipt notice. Yes. At the very least, it's bad negligence. But bad negligence approaches willfulness, doesn't it? I mean, at some point, we're in this sliding scale here. I think bad negligence can, Your Honor. And I wish I could tell you this is the litmus test. My litmus test is more than two mistakes. And so, you know, just from that perspective. Well, again, thank you for your candor, Counsel. But we made two mistakes, Your Honor. It's not a draw line subplot. As a matter of public policy, it's directed in two directions. Employers, you can't ignore this stuff. And we've got to make sure this money's paid out. We've got to make sure this money's paid out. Because sometimes it's not to the State Disbursement Unit where somebody's getting aid or anything like that. It goes to this now single parent. Who's going without for months. Which is sort of like the POTUS's shutdown. In terms of the people who weren't getting paid. I mean, that's one of the consequences. And that's one of the reasons this Act was adopted. I agree 100%, Your Honor. You're absolutely correct. And the reason that the Act was adopted was to punish people who purposefully or knowingly disregard these orders. And the difference, I mean, the statute uses the term knowingly. And the courts that have interpreted what knowingly means say it's purposeful disregard. And so, in other words, not only are you disregarding, you are purposefully disregarding. Well, isn't it a purposeful disregard not to see to it that your mistake is rectified? I think... So that you get a second mistake or a third mistake? I don't think it's purposeful disregard if you thought someone else was taking care of the mistake and you were mistaken in believing they were. Our company relies on an outside accountant. So the outside accountant is responsible. That's what that sounds like. It sounds like part of it, Your Honor. But also, Mr. Flathead testified, and was credited by the court as testifying, that he forwarded the notice, or he intended and told them to forward the notice to the accountant. Now, the accountant said he didn't get it. I don't know what happened from point A to point B, but the intent was not to throw the notice in the trash can. I would agree that that would be purposeful. The intent was to forward the notice to Mr. Mortimer, and it just, for some reason that we don't know, didn't get forwarded. But we had the correct intent. Understanding the importance of making these payments, after you have received the notice of the non-receipt, isn't there a higher standard put upon you to make sure that whatever the problem was has been addressed and the money is now going to be going out? I believe there is, Your Honor. And I think that that creates a presumption that if we don't comply, we were not complying knowing. I think the sending of the notice, the purpose for the notice requirement is to essentially create a situation where if somebody is not complying, you give them notice and say, Hey, keep going. So there's a presumption that you're doing it knowingly if you fail to do it after receiving the non-receipt notice, but it's your claim that the evidence rebutted that presumption because, gee, we still screwed up and we didn't mean it. I believe the evidence rebutted the presumption, Your Honor. And the reason I do is because the witnesses testified and there was no contradiction to their testimony. Well, doesn't that bespeak of, for lack of a better way to put it, a lack of a sense of urgency on Buckhart's part that, gee, we've got this woman who's supposed to be getting the support and it's been months and we'll look into it, but maybe it will work or maybe it won't. I mean, that can't be the standard, can it? I don't think it's the standard and I also don't think in this case the evidence shows that we were anywhere near that cavalier, Your Honor. I think what happened in this case is we received the notice and then the person who received the notice said, Send this to Jeff, the accountant, who's in charge of this. And he figured Jeff, the accountant, would take care of it. Well, how about in Jeff, the accountant, this is real important to make sure this doesn't happen again. How about that as a direction? I think that would have been a good direction to give, Your Honor. But it wasn't. It was not given. But I also don't think the failure to give that direction changes conduct from negligent to willful or changes it to deliberate or changes it to knowing. Please acknowledge that you have received this notice and that you're going to take care of this as soon as possible because if you don't, we're going to get socked with $100 a day penalties. That's what I would have sent to my accountant. Me too, Your Honor. That's not the standard. That's not purposefully disregarding a court order. And so just from that perspective, once a presumption is overcome by evidence, then the presumption vanishes. And as a result of the presumption vanishing in this case, it became their burden of proof to show that the violation was knowing. There was no evidence whatsoever that the trial court credited that showed that the violation was knowing. Finally, to address the last point Your Honor has raised, at a point where the statutory penalty attaches, that point can only be the point of knowledge. In other words, because the statute punishes a knowing violation, the statutory penalty isn't retroactive. And if you had no knowledge and then are given knowledge, for example, if a notice is construed to be knowledge, then the way that that notice would work is it would give you knowledge at that time. It wouldn't create knowledge in your head in the past that you didn't have. And so in terms of what the trial court did in this case, the trial court looked at the situation, drew a line in the sand and said, I'm going to consider Buckhart's sand and gravel to have knowledge from the point where they received the notice we've been discussing, Your Honors. And her decision, although I disagree with it, her decision is based on an interpretation of the statute that I believe is correct, at least as far as when the penalty would attach. The penalty only attaches when it becomes knowing conduct. And so the trial judge found, as a matter of fact, that the violation was not knowing prior to the receipt of that notice. It was the result of an innocent computer coding mistake. And the case law has very analogous cases that cover that issue. And so as soon as the violation could have become knowing is when we received that notice. That's what the trial court found. And that finding isn't against the clear manifest way to the evidence. Now, our position is that in addition to that, the presumption created by the notice was rebutted. And it was rebutted by the testimony of the witnesses. And so unless Your Honors have any other questions, I'll sit down. I see none. Thank you, Counsel. Mr. Graham, any rebuttal, sir?  Let me just start with this, Your Honor. The fact that Buckhart's miscommunication, wherever it occurred, occurred either internally or externally, is irrelevant from our side of the fence. On our side of the fence, it's not our problem how they communicate or miscommunicate. It's only that we expect them to communicate. They were sent an income withholding notice, and they didn't abide by it. We called them on the phone a bunch of times to remind them that we'd sent it to them to find out what was going on, and they ignored us. Counsel's indicated that Mr. Flatt's testimony was found credible by the court, and it was, very specifically. But as you asked me before, with respect to the testimony of all the witnesses in the case, the trial court summarized all of them, every single one. She mentioned Mr. Flatt particularly only when she says Mr. Flatt is credible when he states that it was always his intention and expectation that income would be withheld from John's pay and properly forwarded to the SDU. And I'm sure that that was his intention and expectation. And in fact, when we talk about this miscommunication and how it occurred, and what communication should have been made, as Judge Kinect has indicated, between Mr. Flatt when he receives this notice and Mr. Mortimer when it eventually gets around to him, that communication that you suggested was made by Mr. Flatt. It was, I received this notice of non-receipt. I don't know what this is, but somebody needs to do something about this, get this fixed. And then for another 22 payroll periods after that, nobody fixed it. If we're here to argue about what is contrary to the manifest way to the evidence, the facts of this case are, we did call them a bunch of times before we sent them the notice. Maybe they got the message, maybe they didn't get the message, maybe they transmitted it on, maybe they didn't, but we at least called them. And then after six payroll periods in a lap, just a month and a half, trying to get this resolved without having to go through all of this rigmarole, we sent them the notice of non-receipt. Just pausing right there, why is there a lot of rigmarole to sending a notice of non-receipt? There wasn't, and we could have sent it sooner. We were trying to resolve it without having to march back over here to the courthouse and try and enforce that obligation. We thought maybe they would just disbalance it. Do you have to go to the courthouse to send a notice of non-receipt? No, we don't. But when they don't comply with it, we have to go to the courthouse to force them to comply. The whole idea is if you sent them a notice of non-receipt earlier, this might have jogged them to say, hey, something's not going right. Well, in fact, we sent them the notice of non-receipt when we did, which was six weeks after they should have started withholding the money. And that's when the judge said, now you're going to pay $100 a day. And I understand that. But at that point, they took the notice of non-receipt. They knew what it was. They passed it along, said, take care of this. We don't want this problem. And nobody took care of it to make sure the problem didn't happen. And then 22 more payroll periods elapsed before they started to do something about it. It was four, at least four, and maybe five payroll periods before that, when somebody internal to Buckhart Sand and Gravel recognized the fact, at least that's what they testified about at the trial, that they weren't paying the withheld money over and told somebody else in Buckhart Sand and Gravel, this is a problem, we need to do something about it. And they still didn't do anything about it. What happened after 22 months to make them start? The evidence at the trial was when that date ran around, whether it was May 23rd or May 26th, Mr. Mortimer took a look at the notice of non-receipt, called me on the phone and said, we can't do this. We don't have this kind of money. We can't pay this kind of a penalty. That was May 26th, after they had received the income withholding order notice in December of the prior year, and they received the notice of non-receipt in February. All that period of time elapsed. And we know there was internal communication between people at Buckhart, between Truman, Mr. Flatt, not Truman Flatt, but Mr. Flatt and D.D. Little and Mr. Mortimer about the fact that the order was being provided. There's a $100 penalty at issue here. To whom is it paid? It's paid to my client, to the obligee. Okay. This doesn't go into some court fund or something? No, in this case it does not go to a court fund. Okay. But it is payable to the obligee. And the statute, I think, is very explicit about what the penalty is. And it's not that it's retroactive. It's not that it's assessed in any way other than you would expect it to be assessed under the circumstances and as the legislature intended. They received an income withholding notice. They didn't comply with it. The penalty extends from the date that they didn't comply forward. Thank you, Your Honor. Thank you, counsel. We'll take this matter and advise it to be in recess for a few moments.